## JAMES R. COMBES

### *v.*

### THEODORE R. HOFFMAN and CORNELIA HOFFMAN.

[Submitted April 20th, 1914. Decided September 24th, 1914.]

1. A sheriff's deed will be set aside where the conduct of the judgment creditor was unconscionable and inequitable and the price grossly inadequate.

2. The complainant to obtain equity must do equity and restore the *status quo* as nearly as possible.

---

On bill, answer and proofs.

*Messrs. Hartshorne, Insley & Leake,* for the complainant.

*Mr. Frederic R. Chamberlin, Mr. Randolph Perkins* and *Mr. Edward S. Holman,* for the defendants.

GRIFFIN, V. C.

The complainant in this cause seeks to set aside a deed dated May 29th, 1912, made by a sheriff pursuant to a sale under an execution at law. The order of the important events is as follows:

December 19th, 1892, judgment entered in the Hudson circuit court in favor of *Dennis Reardon and George Doremus, partners, trading as Reardon & Doremus, plaintiffs,* v. *James R. Combes, defendant,* for $590.83.

Doremus died, leaving Reardon as surviving partner.

*December 10th, 1906,* Reardon, as surviving partner, assigned to his son, James H. Reardon, which assignment was recorded *August 14th, 1906.* These dates are so alleged in the bill, and admitted by the answer, but are evidently incorrect.

September 21st, 1907, James H. Reardon received $127.36 from a special master in a partition suit, being money awarded to the defendant, Combes, and the same was applied to the account of Reardon & Doremus.

March 15th, 1912, Dennis Reardon, as surviving partner, assigned the judgment to Theodore Hoffman.

March 26th, 1912, Hoffman docketed judgment in supreme court.

April 18th, 1912, execution issued out of the supreme court for $590.83.

May 29th, 1912, property sold by sheriff to Hoffman for the sum of $25, being the amount of his bid.

June 15th, 1912, the deed from the sheriff to Hoffman, which bears date May 29th, 1912, was acknowledged.

August 20th, 1912, deed recorded in the register's office of Union county.

After August 16th, 1912, the defendant, Combes, was examined in supplementary proceedings, and for the first time learned of the sale.

January 14th, 1913, bill filed in this cause.

February 7th, 1913, James H. Reardon reassigned the judgment to Dennis Reardon, dating the assignment October 23d, 1907.

Mr. Bowen, the counsel for the surviving partner, Reardon, testified that the assignment made by Dennis Reardon to his son, James, was for the purpose of making easier the collection of money which was expected to be had from a partition case in which Combes was a party, with the understanding that James should reassign after the partition suit terminated, and that the son, as assignee, always held the judgment for his father; that there was collected from the special master in the partition proceedings on September 21st, 1907, the sum of $127.36, which moneys were applied to the account of Reardon & Doremus.

James H. Reardon, the assignee, testified that he was not connected with Reardon & Doremus; did not know of the judgment, and never claimed any right, title or interest therein. He knew of the occasion of the assignment of the judgment, but never claimed to own or have any right, title or interest in the judgment.

After the sale attacked had been made, and more than twenty years after the entry of the judgment, James, on February 17th, 1913, reassigned to his father as surviving partner by assignment dated October 23d, 1907. This appears to be the only written assignment executed by James to his father.

A point made by the complainant is that "Hoffman had only an equitable title to the judgment. Any claim he makes to enforce it is barred by his inequitable conduct." I do not take it, from the brief submitted, nor the argument of counsel for the complainant, that he disputes the validity of the execution, or the manner in which it was issued. Dennis Reardon was clearly the equitable owner, at least, of the judgment. His son had no interest therein. It was the duty of the son to account to the father, as surviving partner, for anything he received on account of the judgment, and to reassign whenever requested so to do. This situation vested such a right in Dennis Reardon, as surviving partner, that he would be protected in the ownership of the judgment either at law or in equity. *Terney* v. *Wilson, 45 N. J. Law 282; Brown* v. *Dunn, 50 N. J. Law 111; Johnston* v. *Bowers, 69 N. J. Law 544, 547.*

The complainant also asks that the sale be set aside on the grounds of (1) fraud or surprise; (2) inadequacy of price.

About twelve years after the entry of the judgment the ancestor of the complainant died, by means whereof he became invested with a one-eighteenth interest in some meadow lands lying between the cities of Elizabeth and Newark, containing about twenty acres, which were appraised at about $20,000 by the expert of the complainant, and at $11,000 by the expert of the defendants. The interest, therefore, of the complainant, if free and clear of encumbrances, would range between $600 and $1,100. The property had a purely speculative value. The judgment at the time of the sale amounted to about $1,200. Thus, the property was hardly of sufficient value to satisfy it.

The conduct of the defendant which it is urged constitutes fraud is this: After the first execution had issued, and the amount received from the special master had been credited on the judgment, no action was taken until about nineteen years after the entry of the judgment, when Mr. Holman, the attorney of Hoffman, called on Mr. Bowen, the attorney for Reardon, and stated that he had been to see Mr. Reardon, and that Mr. Reardon had sent him to him (Bowen). Mr. Holman told Mr. Bowen that he had offered Mr. Reardon $25 for the judgment; that a suit was pending against his (Holman's) client, and that he desired to procure the judgment to plead as a set-off or counterclaim in that suit. This testimony is not denied. The result of this conference was that the judgment was assigned to Mr. Hoffman for $75.

Mr. Combes, the complainant, is forty-eight years of age, has lived in the city of Bayonne all his life, and knew Mr. Holman, the attorney of Mr. Hoffman, personally for a great many years. Mr. Holman has an office in the city of Bayonne. Mr. Combes also knew Mr. Chamberlin, another solicitor of record for Hoffman, for a great many years. In fact, it plainly appears that the solicitors and the complainant were well known to each other.

Hoffman, having become the owner of the judgment, execution was taken out thereon; the sale was advertised according to law in the county of Union, and the property was sold by the sheriff to Hoffman for $25, being a sum less than the sheriff's execution fees. Combes had no actual notice of the sale, and

did not learn of the fact until after August 16th, 1912, when supplementary proceedings were instituted against him under the statute; thereupon, on January 14th, 1913, he filed his bill to set aside the deed.

The defendant Hoffman stands in the place of Reardon, the surviving partner. Reardon does not complain that Hoffman defrauded him, but, on the contrary, testified in his favor. Therefore, if complainant could not set aside the sale if Reardon had not assigned and he had caused the sale to be made, then Combes cannot have it set aside as against Hoffman.

Hoffman was not bound, in law, to give personal notice to Combes. He proceeded strictly within his rights. The sale was advertised in the manner provided by statute. But it is very evident from the manner in which Hoffman procured the assignment, the secrecy observed by him in the conduct of the sale, and the price bid at the sale, that he intended by trick or subterfuge to acquire the property of the complainant for a nominal sum. In this he succeeded, obtaining a deed for a consideration less than the sheriff's execution fees, with the result that the property of the complainant was taken from him without the defendant paying even one dollar, which was applied in reduction of the judgment debt, and thereafter, the same, undiminished, might be satisfied out of such other property as the complainant might then have owned or should thereafter acquire. The conduct of Hoffman was so unconscionable and inequitable, and the price was so grossly inadequate, as to shock the conscience of a court of equity. This, coupled with the surprise of complainant, requires that the complainant be relieved. *Kloepping* v. *Stellmacher, 21 N. J. Eq. 328; Rapheal* v. *Zehner, 56 N. J. Eq. 836; Palladino* v. *Hilpert, 72 N. J. Eq. 270 (275, 276).*

The complainant urges that the relief to which he is entitled is a decree setting aside the sale and deed, leaving the defendant to such rights as he may have under a judgment entered more than twenty years ago; in this he is asking that equity be rendered unto him but denied to his adversary. In the case of *Herbert* v. *Herbert (1890), 47 N. J. Eq. 11,* it appears that the

defendant took out a writ of attachment, levied on the lands of the complainant, and, in due course of law, the same were sold to the defendant. The complainant had no knowledge of the existence of the suit until after the deed had been delivered, when the defendant notified the complainant of the fact. During the suit it appears the defendant had visited the complainant at his New York office, but did not inform him of the pendency of the suit. The motion was to dismiss the bill. There were indications in the bill that the claim in attachment was founded on notes which were barred by the statute of limitations, and it was insisted that the defence under that statute was unconscionable. Chancellor McGill said: "The bill invokes the assistance of this court against a sale under a judgment at law. * * * The terms upon which relief will be afforded must be equitable. If, under circumstances hereafter developed, it shall be made to appear that the complainant's defence to the claim upon which judgment is founded is unconscionable, though ample under the strict rules of law, the defendant's legal advantage with respect to it will not be disturbed."

The defendant Hoffman is not here seeking relief; he is content with his present position. The complainant, however, seeks equity, and must do equity. That equity consists in restoring the *status quo* as nearly as possible. This can only be accomplished by allowing the sale to stand and declaring that the defendant holds the property in trust to sell and apply the proceeds in reduction or payment of the amount due upon his judgment, rendering any surplus to the complainant.

I will advise a decree appointing a special master of this court to sell said lands and apply the proceeds in accordance with the views above expressed. No allowance will be made to the defendants for the costs and expenses of the sale attacked.